Filed 7/19/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person of S.A. | 2d Civil No. B284312 (Super. Ct. No. 14PR-0145) (San Luis Obispo County) |
| PUBLIC GUARDIAN OF THE COUNTY OF SAN LUIS OBISPO, as Conservator, etc., Petitioner and Respondent, v. S.A., Objector and Appellant. | |

S.A. appeals an order granting the petition of the Public Guardian of the County of San Luis Obispo (Public Guardian) for reappointment as the conservator of her person.  A jury found beyond a reasonable doubt that she continues to be

gravely disabled as a result of a mental disorder. (Welf. & Inst. Code,[1] § 5000 et seq.; Lanterman-Petris-Short Act (LPS Act).)

S.A. contends her constitutional and statutory rights were violated when Public Guardian subpoenaed records of her care and treatment, signed an authorization for their release on her behalf, and then used the records against her at trial. We affirm.

FACTUAL AND PROCEDURAL HISTORY

S.A. suffers from schizoaffective disorder. She has not lived independently for more than 20 years. She has had many commitments to the County Psychiatric Health Facility (the PHF) and several LPS conservatorships.

In the summer of 2016, the trial court reappointed Public Guardian for a one-year period as S.A.'s conservator. We affirmed the order. (*Conservatorship of S.A.* (July 19, 2017, B276247) [nonpub. opn.].)

As that conservatorship period expired, Public Guardian petitioned to be reappointed again. S.A. contested the petition and requested a jury trial. The court set trial to commence in 25 days. (§ 5350, subd. (d).)

Two weeks before trial, Public Guardian served S.A. with copies of documents it intended to use as exhibits, including records of S.A.'s care and treatment at the PHF and at a board and care facility. S.A. moved in limine to preclude Public Guardian's experts from testifying to case-specific hearsay and opinions of other experts contained in those records pursuant to *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*).

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

When Public Guardian received S.A.'s motion, it served both facilities with subpoenas for production of authenticated copies of the records and gave S.A. notice of the subpoenas. Public Guardian signed authorizations for release of the records on S.A.'s behalf. The custodians of the records produced them along with affidavits attesting that the records were prepared in the ordinary course of business at or near the time of the events recorded.

S.A. amended her motion in limine to object to the use of the records at trial on the following grounds: she did not receive 10 days notice before their production (Code Civ. Proc., § 1985.3, subd. (b)(2)); Public Guardian had no authority to release them because it is not "the consumer . . . or her attorney" (*id.*, subd. (c)(2)); the records lacked foundation as business records because the affiants did not demonstrate knowledge of the method of their preparation (Evid. Code, § 1271); the records are protected by S.A.'s physician-patient privilege (*id.*, § 994)[2]; her right to confront witnesses precludes any expert from relating case-specific facts or opinions of others in the records; and her right to due process would be violated if Public Guardian were permitted to "change hats" by using the records against her in an adversarial proceeding after obtaining them with its powers as her conservator.

At the hearing on S.A.'s motion, the trial court said it would not allow experts to testify to case-specific hearsay not otherwise proved by admissible evidence, pursuant to *Sanchez*.

[2] S.A. acknowledges that she did not raise the psychotherapist-patient privilege in the trial court and that "most of the material" in the records "would not fall under" that privilege.

It also accepted S.A.'s proposed redactions of conclusions, opinions, and remote or immaterial matters that she identified in the records.  It otherwise overruled her objections, finding that the 10-day notice-to-consumer provision of Code of Civil Procedure section 1985.3 was not intended to apply to LPS proceedings; that Public Guardian was authorized by statute to sign the release of records and to waive S.A.'s privileges on her behalf; and that the records fall within the business records exception to the hearsay rule based on the custodians' affidavits and the court's review of the records.

At trial, psychiatrist Rose Drago read excerpts of the redacted records to the jury.  She relied on them in part for her opinion that S.A. suffers from schizoaffective disorder, bipolar type, and is unable to provide for her own basic needs outside of a highly structured environment.  Drago also relied on her 15 years of personal experience treating S.A., first as a staff psychiatrist and then as medical director for the County Mental Health Department until her retirement in 2011, and upon subsequent interviews with S.A., including an interview three days before trial.

Drago testified that she did not personally observe S.A. at the board and care facility, but reviewed records from S.A.'s five-day stay there.  She described staff entries including the following:  S.A. was threatening and aggressive and attempted to physically assault staff before she was transferred from the board and care facility to the PHF; said to a physician "I hate you because you're a woman and doctor.  I don't need a psychiatrist.  I'll decide if I want to hire you or fire you.  I only work with Ph.D.s.  Are you a Ph.D.?  You could be a lunatic"; accused staff of keeping her property of "$100 million"; said that

4

her spinal problems were the result of a fall caused by overmedication; said she was angry with her conservator and felt persecuted; refused a full injection of Haldol but agreed to a partial dose; said she healed a deaf man and made him speak; and said she had a $15 million Hyundai that was a submarine.

Drago also related details from the PHF records, including these: a staff member saw S.A. smoking, she had cigarettes and a lighter, and she said she was not a patient but was applying for a job; a staff member saw S.A. demand her cigarettes, wallet and phone so she could "call her ride"; she denied being under conservatorship and said she owned a home in Atascadero.

S.A. testified that she does not have a mental illness. She described her plans to work, find a place to live, and to feed herself if allowed to live independently. She testified she "always" takes her medication voluntarily except once when she was "crippled." She denied making certain statements attributed to her in the records.

In closing argument, counsel for Public Guardian referred to excerpts of the records and encouraged the jury to read them. The jury unanimously decided S.A. is gravely disabled, and the trial court renewed her conservatorship for a one-year period.

In a subsequent, bifurcated disabilities hearing, Public Guardian offered into evidence a record of a postverdict assessment by the County Behavioral Health Department. S.A.'s counsel objected to most of it on hearsay grounds, and "underline[d]" the part she "thought would be admissible under the business record[s exception]." The trial court sustained that objection and admitted only the underlined portion.

5

DISCUSSION

Public Guardian offered S.A.'s records to prove "the historical course of [her] mental disorder," a matter the jury was required to consider based on S.A.'s "medical records as presented to the court, including psychiatric records." (§ 5008.2, subd. (a); CACI 4011.) We conclude Public Guardian was authorized to do so, and that the manner of production and use of the records did not violate S.A.'s statutory or constitutional rights.

*The Production of S.A.'s Consumer Records and the Conservator's Adverse Use of Them*

In civil cases generally, a party who subpoenas a consumer's records must either demonstrate service to "the consumer . . . or her attorney" at least 10 days before the date set for production, or furnish to the producing witness a written authorization for release signed by "the consumer . . . or her attorney." (Code Civ. Proc., § 1985.3, subds. (b) & (c).) Public Guardian gave S.A. a one-day notice before the date of production. It signed the authorization for release on her behalf. We agree with the trial court that the technical noncompliance with Code of Civil Procedure section 1985.3's 10-day notice requirement did not render the production improper in this LPS proceeding and that Public Guardian was authorized to sign the release on S.A.'s behalf.

The rules of civil procedure generally apply to this special proceeding of a civil nature. (*Sorenson v. Superior Court* (2013) 219 Cal.App.4th 409, 432 (*Sorenson*).) But specific and accelerated rules of procedure apply to a contested petition for appointment. (§ 5350, subd. (d).) The Legislature could not have intended the 10-day notice-to-consumer provision to apply in such a proceeding because trial must commence within 10 days after

6

the proposed conservatee demands it and the court may only continue trial for 15 days upon request of the proposed conservatee.  (*Ibid.*)

The accelerated procedure did not undermine Code of Civil Procedure section 1985.3's purpose, which is to give the consumer notice and an opportunity to object to disclosure of private information.  (*Foothill Federal Credit Union v. Superior Court* (2007) 155 Cal.App.4th 632, 638.)  Production to Public Guardian was not a disclosure of the sort the statute was designed to protect against, because Public Guardian already had this private information as the overseer of S.A.'s care (§ 5328; Prob. Code, §§ 2351, 2355 [conservator's exclusive authority to make health care decisions]).  Before the records were disclosed to the jurors, S.A. had 14-day's notice of Public Guardian's intent to use them at trial and the opportunity to object in a written motion in limine, an amended motion in limine, and two lengthy court hearings on their admissibility.  Technical compliance with Code of Civil Procedure section 1985.3 would have contributed nothing to the fairness of these LPS proceedings.

Code of Civil Procedure section 1985.3 does not expressly authorize Public Guardian to sign a release on S.A.'s behalf, but more specific statutes do.  Medical providers are authorized to release a patient's records upon "written authorization . . . signed by . . . the . . . conservator of . . . her person or estate."  (Evid. Code, § 1158, subd. (b).)  And a "conservator" is the "holder" of the psychotherapist-patient privilege and the physician-patient privilege "when the patient has a . . . conservator."  (Evid. Code, §§ 993, 1013.)  All information and records obtained in the course of providing services under the LPS Act are generally confidential (§ 5328),

7

but they may be disclosed, (1) "in the course of conservatorship proceedings," when the patient or "her conservator" consents (*id.*, subd. (a)(1)); (2) whenever the "conservator . . . designates, in writing, persons to whom" they may be disclosed (*id.*, subd. (a)(4)); or (3) "[t]o the courts, as necessary to the administration of justice" (*id.*, subd. (a)(6)).  Public Guardian was thus expressly authorized to release the records for use in the conservatorship proceedings, and it was authorized to use them to prove "the historical course of [S.A.'s] mental disorder."  (§ 5008.2.)

S.A. contends the trial court violated her constitutional rights to privacy and due process when it allowed Public Guardian to use its position as her conservator to obtain and introduce evidence against her in adversarial proceedings. She points out that she has a right to privacy (Cal. Const., art. I, § 1); she is not presumed to be incompetent as a result of her conservatorship (*Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1313); and a person under conservatorship retains all rights not specifically denied under the LPS Act (*Edward W. v. Lamkins* (2002) 99 Cal.App.4th 516, 526).  She argues that, as the holder of her privileges, Public Guardian had a duty to protect her privacy and she points out that a conservator's powers are not unlimited, but must be exercised "in accordance with the conservator's determination of the conservatee's best interest," taking into account any known personal values of the conservatee.  (Prob. Code, § 2355; see also Prob. Code, §§ 1800, subd. (e), 1812, subd. (a); *Conservatorship of Lefkowitz* (1996) 50 Cal.App.4th 1310, 1314.)  She further argues she should have the same procedural protections in this reestablishment proceeding as she would in an initial proceeding, where Public Guardian would not have authority to release her

8

records.  (*Conservatorship of Deidre B.* (2010) 180 Cal.App.4th 1306, 1312 ["The reestablishment hearing is conducted according to the same rules that govern the initial establishment of a conservatorship"].)

S.A.'s rights to privacy and due process were fully protected.  The trial was not open to the public and her records are sealed.  (§ 5118; *Sorenson*, *supra*, 219 Cal.App.4th at p. 416.)  She retains many of her rights, but the LPS Act denies her the right to exclusive control of her medical records as a consequence of her preexisting conservatorship.  Public Guardian had a statutory duty to determine whether S.A.'s conservatorship should be reestablished and, if she contested that determination, as she did here, to provide the jury with her psychiatric records to help it determine whether a conservatorship is appropriate.  (§ 5008.2; CACI 4011.)  Public Guardian exercised its powers in accordance with its determination of S.A.'s best interests when it decided she remained unable to care for herself.  Significant safeguards protected her against any misuse of Public Guardian's powers:  she had a right to counsel and to a unanimous jury finding based on proof beyond a reasonable doubt.  (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 541.)

S.A. points to cases that illustrate limitations on a conservator's powers, but none of them apply here.  In *Michelle K. v. Superior Court* (2013) 221 Cal.App.4th 409, 447, the court held a conservator does not have the power to replace a conservatee's court-appointed independent counsel with counsel the conservator selects, because to do so would "render her right to independent counsel meaningless."  But here the conservator did not interfere with S.A.'s counsel.  Her counsel independently and zealously opposed Public Guardian's case, including its use of

9

S.A.'s records at trial. In *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 523-524, the court held that a conservator may not withhold artificial nutrition and hydration from a conservatee who is not terminally ill, comatose, or in a persistent vegetative state without clear and convincing evidence that the decision is in the conservatee's best interest or consistent with their own wishes. But here, statutes authorized Public Guardian to pursue reappointment based on grave disability, regardless of S.A.'s contrary wishes.

S.A. cites a dependency case, *In re M.L.* (2012) 210 Cal.App.4th 1457, 1469-1470, for the principle that evidence disclosed at the request of a conservator pursuant to section 5328 is not automatically admissible: "The proponent seeking admission of the disclosed, privileged evidence at trial has the additional burden of proving that it comes within some statutorily or case-based exception to the psychotherapist-patient privilege." But in this LPS proceeding, the records come within a statutorily based exception: section 5328 expressly authorizes disclosure of psychotherapy records "in the course of conservatorship proceedings." (§ 5328, subd. (a)(1); see also § 5008.2; CACI 4011.)

*Hearsay*

S.A. contends the records were inadmissible hearsay, and that Drago impermissibly relayed to the jury case-specific facts within them that were not otherwise proven. (Evid. Code, § 1200; *Sanchez*, *supra*, 63 Cal.4th at p. 686; *Conservatorship of K.W.* (2017) 13 Cal.App.5th 1274, 1285-1286.) She points out that civil litigants have a due process right to cross-examine witnesses. (*Long v. Long* (1967) 251 Cal.App.2d 732, 736.) We conclude S.A.'s medical records, as redacted, were admissible

10

under the business records exception to prove the acts, conditions, and events recorded therein.  (Evid. Code, § 1271.)  We further conclude that Drago did not relate any prejudicial case-specific facts not independently proven by admissible evidence.  Because we conclude the records are admissible under the business records exception, we do not reach Public Guardian's further contention that section 5008.2 operates as an independent exception to the hearsay rule when medical records are offered to prove the historic course of a proposed conservatee's mental disorder.

The trial court has wide discretion to determine whether there is a sufficient foundation to qualify evidence as a business record; we will overturn its decision to admit such records only upon a clear showing of abuse.  (*People v. Beeler* (1995) 9 Cal.4th 953, 978-979.)  The business records exception requires a foundational showing that (1) the writing was made in the regular course of business; (2) at or near the time of the act, condition, or event; (3) the custodian or other qualified witness testifies to its identity and mode of preparation; and (4) the sources of information and mode and method and time of preparation indicate trustworthiness.  (Evid. Code, § 1271; *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 737-738.)  These requirements may be satisfied by affidavit.  (Evid. Code, § 1561; *Cooley v. Superior Court* (2006) 140 Cal.App.4th 1039, 1044 (*Cooley*).)

The trial court expressly found the records were trustworthy and supported by a sufficient foundation.  The records from the board and care facility were accompanied by a declaration of a clinical administrative assistant who attests they were prepared or compiled by the facility's personnel in the

11

ordinary course of business at or near the time of the acts, conditions, or events recorded, "to the best of [her] knowledge." The records from the PHF were accompanied by a substantially similar declaration from a medical records supervisor. The affidavits comply with Evidence Code section 1561, the purpose of which is to "ensure that such [nonparty business] records may . . . be admissible without requiring their authenticity to be proved through live testimony from the custodian of records or other qualified witness." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 3001 (1995-1996 Reg. Sess.) May 16, 1996, p. 1; *Cooley*, *supra*, 140 Cal.App.4th at p. 1045.)

S.A. contends the affiants do not establish their knowledge of the mode of preparation because they describe it only "to the best of [their] knowledge" and they do not provide sufficient information about the source of the information in each record. But it is not necessary that the witness called to present foundational facts have personal knowledge of every transaction; he need only be familiar with the procedures followed. (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 322.) S.A. contends both declarations fail to identify the records involved, but both identify the documents as those "submitted with this declaration."

S.A. argues that not every entry expressly states that the person who recorded it was the direct observer. She points, for example, to an entry that begins "Per staff . . ." and questions whether the writer witnessed the events. But the trial court considered these arguments, reviewed the records, and found the PHF records were "clearly the reports of persons and staff, licensed psychiatric technicians, . . . who are reporting [S.A.'s] observed conduct" and the board and care facility records were

12

"obviously the observations . . . of the people in the psychiatric program." The trial court accepted S.A.'s proposed redactions and found Public Guardian laid a sufficient foundation for their admission.

Drago's testimony about the contents of the records did not violate S.A.'s constitutional rights because she related only case-specific facts that were proved by admissible evidence. An expert witness may rely on hearsay in forming an opinion, and may tell the jury "in general terms" that she did so, but may not "relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Sanchez, supra,* 63 Cal.4th at pp. 685-686, italics omitted; Evid. Code, §§ 801, 802.) *Sanchez* applies to conservatorship proceedings. (*Conservatorship of K.W., supra,* 13 Cal.App.5th at p. 1284.) Here, the case-specific hearsay related by Drago came from medical records that qualified for admission under the business records exception to the hearsay rule.

DISPOSITION

The order is affirmed.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.


13

Donald Umhofer, Judge

Superior Court County of San Luis Obispo

_____

Julia Freis, under appointment by the Court of Appeal, for Objector and Appellant.

Rita L. Neal, County Counsel, Hillary A. Matos and Leslie Kraut, Deputies County Counsel, for Petitioner and Respondent.