Filed 10/17/22 Conservatorship of V.M. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person of V.M. | 2d Civil No. B318934 (Super. Ct. No. 21PR-0304) (San Luis Obispo County) |
| PUBLIC GUARDIAN OF THE COUNTY OF SAN LUIS OBISPO, Petitioner and Respondent, v. V.M., Objector and Appellant. | |

V.M. appeals from a judgment appointing respondent as conservator of her person for a one-year period. The judgment was entered following a jury trial. The jury unanimously found that appellant is "presently gravely disabled due to a mental

disorder."  At the time of trial, appellant was a 22-year-old woman.

Appellant contends the trial court abused its discretion in admitting her medical records and in allowing respondent's expert witness to refer to the records.  The records were admitted pursuant to the business records and admission exceptions to the hearsay rule.  (Evid. Code, §§ 1271, 1220.)[1]  In addition, appellant claims she was denied her right to cross-examine doctors who did not testify but whose opinions were relied on by respondent's expert.  We affirm.

*Pretrial Hearing*

At a pretrial hearing appellant objected to the admission of her medical records ("the records") from three facilities:  Stanford Health Care (Stanford), San Luis Obispo County Psychiatric Health Facility (SLO County PHF), and Aurora Vista Del Mar.  Appellant's counsel said:  "I object to them being admitted, as they do state the admissions of [appellant] in this matter."  Respondent's expert, Dr. Rose Drago, "can use them as part of her opinion, but she cannot bring them into evidence" because they contain hearsay and appellant did "not have an opportunity to cross-examine the people who made the [out-of-court] statements."  Counsel's objection was based on *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*).  Counsel conceded the records are relevant evidence.

Respondent argued that the records are admissible "under the business records exception to the hearsay rule."  (§ 1271.)  Respondent said the records had been redacted "[s]o what's

_____

[1] All undesignated statutory references are to the Evidence Code.

2

remaining should be statements that are attributed to [appellant], herself."

The trial court overruled appellant's objection for the following reasons: "Number one, there's at least one hearsay exception that applies in this case pursuant to Evidence Code [s]ection 1271 [the business records exception]. Based on my review of the records, it is evident to me that the writings were made in the regular course of business. [¶] Number two, . . . the writings were made at or near the time of the act, condition, or event. [¶] Number three, . . . the declarations of the custodians of records have sufficiently identified the record and the mode of their preparation. [¶] And . . . the records . . . appear to be trustworthy. They're not fabricated. . . . [¶] . . . [M]any of the statements in the records are statements made by [appellant], herself, so they come in under [the hearsay exception for] a party['s] admission [(§ 1220)]."[2]

*Evidence Presented at Trial*

The trial occurred in February 2022. At that time, appellant was living at the Crestwood Champion Healing Center (Crestwood), a secured facility in Lompoc. She had been there since October 2021.

<u>Dr. Drago's Testimony</u>

Dr. Drago, a psychiatrist, was called by respondent as an expert witness. In preparation for her testimony, she reviewed the records, the conservatorship investigative report, and "doctors' declarations from [appellant's] facility." Two weeks before the trial, she interviewed appellant via Zoom.

---

[2] Section 1220 provides: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party . . . ."

3

Dr. Drago diagnosed appellant as having a "schizoaffective disorder, bipolar type." This is "a hybrid of schizophrenia and manic depressive illness."

During the interview, appellant did not exhibit symptoms of her disorder: "She's in a good place [Crestview] right now. She's stable on her medications, seemingly. So her mood was stable, and there . . . was no overt evidence of psychosis during the interview."

Dr. Drago read two notes from the records. One note from April 2021 said, "'Patient [appellant] stated that she had hit a guy on the street because she felt threatened but could not state why she felt threatened. And patient has not been taking her meds . . . .'" The other note from May 2021 said, "[Appellant] states that, . . . 'The voice inside her head,' . . . has been . . . 'louder' . . . recently . . . to the point where she cannot hear her own thoughts." Dr. Drago opined that this "is an example of an auditory hallucination."

In response to a question whether appellant "is . . . compliant with her prescribed psychiatric medications," Dr. Drago responded: "In a facility such as Crestwood, which is a locked structured facility, yes, she is compliant. As an outpatient, she historically has not been compliant with medication." Appellant told Dr. Drago that she did not have "a mental illness" and "would stop her medication . . . if she were on her own."

Dr. Drago opined that, if appellant stopped taking her medications, she would be "gravely disabled." Notes from a medical facility indicated that, without her medications, "[s]he has hallucinations, usually hearing things, and becomes delusional, feeling a threat from others sometimes."

4

Dr. Drago further opined, "[W]ithout treatment in a structured setting right now, she would be disorganized in her thinking, probably hallucinating, probably paranoid and suicidal, and not able to even come close to providing for her needs. She'd be vulnerable. She'd be in a homeless community where she's been before, and it would not be a safe situation for her."

Dr. Drago noted that appellant had attempted suicide on three occasions. The first hospitalization occurred in 2017 "after a suicide gesture of laying on the railroad tracks." "She . . . had two serious suicide attempts in 2021 that both led to hospitalization and serious injuries." During the second attempt, which occurred in September 2021, appellant drank bleach. Appellant "tends to minimize" the suicide attempts.

<u>Appellant's Testimony</u>

Appellant testified: Her plans for the future are "to live back at home with my mother and to start working." She does not have a mental disorder and does not experience "auditory hallucinations." If she were on her own, she would not take her medications. She was admitted to Stanford Health Care because she had "jumped from a four-story building."[3] She was "homeless in 2020 from December until January."

*Closing Argument*

During closing argument, respondent's counsel told the jury: "[F]rom the records that you will see from three separate medical facilities, from three separate admissions, . . . and as Dr. Drago described, [appellant], indeed suffers from symptoms that are associated with mental illness. You'll receive these medical

---

[3] According to Stanford's medical records, appellant said she had "jumped from the 4th story" of a "parking structure," but "[a] tree broke her fall."

5

records in the deliberation room, and I encourage you all to take the time to review them."

Respondent's counsel continued: "You'll see in the exhibits that [appellant] denies having a mental illness; however, you will also see in the exhibits that [she] acknowledges hearing noises, endorses thought broadcasting, has paranoia, and has tangential thinking. As such, I urge you to find that . . . [she] has a mental disorder . . . ." "The medical records entered into evidence will . . . show that she has failed to take her psychiatric medications in the past . . . ."

*The California Supreme Court's Sanchez Opinion*

Appellant argues, "Mental health records and related testimony were improperly admitted in violation of the *Sanchez* rule against admission of case-specific hearsay, and of appellant's state and federal rights to cross-examine witnesses." (Bold and capitalization omitted.) "Hearsay may be briefly understood as an out-of-court statement offered for the truth of its content. . . . Hearsay is generally inadmissible unless it falls under an exception." (*Sanchez, supra*, 63 Cal.4th at p. 674.)

In *Sanchez* our Supreme Court held: "If an expert testifies to case-specific out-of-court statements to explain the bases for his opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay. Like any other hearsay evidence, it must be properly admitted through an applicable hearsay exception." (*Sanchez, supra,* 63 Cal.4th at p. 684, fn. omitted.) "What an expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id*. at p. 686.) "Case-specific facts are those relating to the particular events and participants alleged to

6

have been involved in the case being tried." (*Id*. at p. 676.) "*Sanchez* applies to conservatorship proceedings." (*Conservatorship of S.A.* (2018) 25 Cal.App.5th 438, 448.)

*No Abuse of Discretion in Admitting the*
*Records under the Business Records Exception*

Section 1271 states the business records exception to the hearsay rule: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." "These requirements may be satisfied by affidavit. [Citations.]" (*Conservatorship of S.A., supra*, 25 Cal.App.5th at p. 447.)

"The trial court has wide discretion to determine whether there is a sufficient foundation to qualify evidence as a business record; we will overturn its decision to admit such records only upon a clear showing of abuse." (*Conservatorship of S.A., supra*, 25 Cal.App.5th at p. 447.)

As to the records from SLO County PHF and Aurora Vista Del Mar, the trial court did not abuse its discretion. The records were accompanied by declarations under penalty of perjury from the custodian of records at each of the medical facilities. The custodians identified the records and attested that they had been "prepared by personnel . . . in the ordinary course of business, at or near the time of the acts, conditions, or events recorded." The custodians described the mode of preparation of the records: "The

7

records were prepared by different members of the above-named patient's treatment team.  The individual author(s) of each notation had personal knowledge of the act, condition, or event recorded.  Each individual author either directly witnessed the act, condition or event recorded, OR was provided information by someone who directly witnessed the act, condition, or event recorded."  The trial court said, "I have reviewed the records very carefully . . . [and] they appear to be trustworthy.  They're not fabricated . . . ."

With one exception, the Stanford custodian's declaration is consistent with the declarations of the other custodians.  The exception is the description of the mode of preparation of the records.  The Stanford custodian states, "The mode of preparation of these records is described as copies of the originals."  Appellant contends that this statement does not meet the requirement of the business records exception that the custodian testify to the "mode of [the record's] preparation."  (§ 1271, subd. (c).)

We need not determine whether the Stanford custodian adequately described the mode of preparation of the records.  The face of the Stanford records shows their mode of preparation so that a detailed description by the custodian was unnecessary.

The Stanford records consist of three notes.  The first was authored by Dr. Filza Hussain and filed on May 5, 2021.  It was based on an original note prepared by Dr. Dany Lamothe and filed on May 4, 2021, the date appellant was admitted to Stanford.  The second note was authored by Dr. Giovanni Dandekar and filed on May 17, 2021.  It was based on an original note prepared by Dr. Natalie Ruth Marks and filed on May 14, 2021.  The last note was authored by Dr. Yelizaveta Sher and

filed on May 19, 2021.  It was based on an original note prepared by Dr. Dany Lamothe and filed on May 14, 2021.

All three notes are heavily redacted so that only records of appellant's statements are visible.  These records obviously were prepared by appellant's treatment team at Stanford based on her statements to members of the team.  Testimony by the Stanford custodian as to their mode of preparation would merely have reiterated what was self-evident.

The trial court said it had "reviewed the records very carefully."  "A trial judge has broad discretion in admitting business records under Evidence Code section 1271, and it has been held that the foundation requirements may be inferred from the circumstances."  (*People v. Dorsey* (1974) 43 Cal.App.3d 953, 961.)

Appellant maintains that "admission [of the records under] the business record exception is not proper in this case, because it . . . abrogates the rights of a person subject to civil commitment to cross examine witnesses."  But *Sanchez* makes clear that in a civil action, such as a conservatorship proceeding, case-specific hearsay is admissible if it falls within an exception to the hearsay rule.  (*Sanchez, supra*, 63 Cal.4th at p. 686.)  "Drago's testimony about the contents of the records did not violate [appellant's] constitutional rights because she related only case-specific facts that were proved by admissible evidence. . . .  [T]he case-specific hearsay related by Drago came from medical records that qualified for admission under the business records exception to the hearsay rule."  (*Conservatorship of S.A.*, 25 Cal.App.5th at p. 448.)

Because the records were admissible under the business records exception, we do not consider respondent's claim that

9

"Welfare and Institutions Code section 5008.2 operates as an independent hearsay exception because it requires the trier of fact to consider the historical course of the individual['s] illness, including considering the patient's medical and psychiatric records."[4]

*Appellant Forfeited Claim She Was Denied the*
*Right to Cross-Examine Doctors Who Did Not Testify*

Dr. Drago testified that, when she evaluates a patient, she considers "what other clinicians have thought." Respondent asked Dr. Drago whether she felt "confident in coming to a diagnosis after reviewing records and having an interview with an individual." She responded in the affirmative and gave the following explanation: "[B]y the time people get to this point, there's usually been multiple clinicians that have weighed in . . . . So it's not that I'm out in the desert . . . . [W]hen there's been several clinicians seeing and saying pretty much the same thing, it helps a little bit more, too." Dr Drago had earlier testified, "[A]s the notes from, I believe it was Stanford, indicate, [appellant] does become psychotic without medications."

Based on the above testimony, appellant claims Dr. Drago relied on the opinions of other doctors "to bolster her diagnosis." Appellant argues that she "was denied her state and federal rights to cross-examination" of these "non-testifying doctors." (Bold and capitalization omitted.)

---

[4] Welfare and Institutions Code section 5008.2 provides in relevant part: "[T]he historical course of the person's mental disorder . . . shall be considered when it has a direct bearing on the determination of whether the person is . . . gravely disabled, as a result of a mental disorder. The historical course shall include . . . the patient's medical records as presented to the court, including psychiatric records . . . ."

10

As authority for her argument, appellant cites our opinion in *People v. Campos* (1995) 32 Cal.App.4th 304, 308 (*Campos*). There, the defendant contested a jury's determination that he was a mentally disordered offender (MDO). (Pen.Code, § 2960 et seq.) Dr. Mertz testified "that nontestifying experts who evaluated [defendant] concurred in her opinion that [he] met the MDO criteria . . . ." (*Campos, supra,* at p. 306.) We held: "Doctor Mertz was properly allowed to testify that she relied upon the reports in forming her own opinions. The trial court erred, however, when it allowed her to reveal their content on direct examination by testifying that each prior medical evaluation agreed with her own opinion. '[D]octors can testify as to the basis for their opinion [citation], but this is not intended to be a channel by which testifying doctors can place the opinion of innumerable out-of-court doctors before the jury.'" (*Id*. at p. 308.)

Appellant concedes that her "counsel did not expressly object to" the testimony in question. But she maintains that, "in light of the trial court's ruling[] on admission of records, which were based on appellant's rights to cross-examine witnesses . . . , any such objection would have been futile."

We disagree. The redacted records contained only appellant's statements. They did not include the opinions of appellant's doctors concerning her mental condition. It is therefore not reasonable to conclude that the court would have overruled a *Campos* objection to Dr. Drago's testimony that she felt confident about her diagnoses because, by the time she gets a case, "there's been several clinicians seeing and saying pretty much the same thing."

Accordingly, appellant forfeited the issue. "Ordinarily, 'the failure to object to the admission of expert testimony or hearsay

11

at trial forfeits an appellate claim that such evidence was improperly admitted.' [Citations.] "'The reason for the [objection] requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.'"" (*People v. Perez* (2020) 9 Cal.5th 1, 7; see also *People v. Partida* (2005) 37 Cal.4th 428, 433-434 ["'In accordance with [section 353, subdivision (a)], we have consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable"'].)

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P. J.


LUI, A.P.J.*

---

* Administrative Presiding Justice of the Court of Appeal, Second Appellate District, Division Two, assigned by Chief Justice pursuant to article VI, section 6 of the California Constitution.

Hernaldo J. Baltodano, Judge

Superior Court County of San Luis Obispo

_____


Jean Matulis, under appointment by the Court of Appeal, for Objector and Appellant.

Rita L. Neal, County Counsel, Chelsea K. Kuhns, Deputy, for Petitioner and Respondent.