Filed 6/29/26  Conservatorship of B.D. CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

| | |
|---|---|
| Conservatorship of the Person and Estate of B.D. | C105170 |
| TEHAMA COUNTY PUBLIC GUARDIAN, as Conservator, etc.,<br>    Petitioner and Respondent,<br><br>    v.<br><br>B.D.,<br>    Objector and Appellant. | (Super. Ct. No. 19PR-000062) |

Appellant B.D. appeals from an order reappointing a conservator of her person and estate under the Lanterman-Petris-Short Act (LPS Act).  (Welf. & Inst. Code, § 5000 et seq.; statutory section citations that follow are to the Welfare and Institutions Code unless otherwise set forth.)  She first argues the trial court erred in admitting hearsay evidence at her trial.  We hold this claim has been forfeited and we reject appellant's alternative claim that her trial counsel was constitutionally ineffective for failing to preserve her evidentiary claim.  Appellant also argues there was insufficient evidence to support the court's finding that she was gravely disabled and could not manage her financial resources; and she claims the disabilities imposed in the court's written order were not properly imposed and were unsupported by substantial evidence.  We affirm the trial court's order.

1

## FACTS AND HISTORY OF THE PROCEEDINGS

On September 15, 2025, the Tehama County Public Guardian (Public Guardian) petitioned for the reappointment of a conservator of the person and estate of B.D. The petition requested that the trial court continue to deny appellant: (1) the privilege of possessing a license to operate a motor vehicle; (2) the right to enter into contracts; (3) the right to refuse or consent to treatment related to a mental disorder; (4) the right to refuse or consent to routine medical treatment unrelated to being gravely disabled; and (5) the right to possess a firearm. B.D. waived her right to a jury trial in favor of a court trial.

At trial, Dr. Heather O'Connell testified as an expert witness regarding psychological issues in the context of LPS proceedings.

On direct examination, Dr. O'Connell testified that she had evaluated B.D. approximately 10 times since 2018 and had evaluated B.D. on two separate occasions in the weeks preceding trial. Dr. O'Connell also reviewed B.D.'s medical records. Dr. O'Connell said that she agreed with B.D.'s current diagnosis of schizoaffective order, bipolar type. Dr. O'Connell explained that symptoms of this mood disorder include delusions, which B.D. had a well-documented history of. When further asked about B.D.'s delusions, Dr. O'Connell testified that B.D. has religious preoccupations that interfere with her judgment. As an example, Dr. O'Connell related that B.D. once stopped taking her epilepsy medication because she wanted to use prayer to treat herself instead; B.D. subsequently suffered a seizure. Dr. O'Connell added that, in May 2025, B.D. decided to get into a vehicle with a stranger because she believed God had sent the stranger to rescue her. In that instance, B.D. went to a parking lot with that stranger and "there was physical sexual contact." Dr. O'Connell expressed concern that this "could have been a very bad situation."

Dr. O'Connell also explained that B.D. suffers from mood dysregulation of an irritability type. As an example, Dr. O'Connell discussed how B.D. "got irritable" when a server did not hear her food order. Either as part of the same incident or a different incident, Dr. O'Connell said B.D. shared that she "let the kitchen staff know that she was very upset." She said that B.D. got irritated "about portions of food that people were receiving" and essentially told off the kitchen staff.

Dr. O'Connell discussed how B.D. has expressed the belief "that she just needs more quiet time with God and Jesus and the Holy Spirit and the Bible for treatment instead of other types of treatment. And she would like to have just a more holistic medication regimen." Further, "staff have worked with her to enhance her insight into her need for treatment. And she continues to question -- question her medication regime and her treatment."

Dr. O'Connell testified that B.D. had been getting marked as "inadequate" for hygiene in the past months and has refused medication. There was a progress note in B.D.'s file stating that B.D. "may need a high level of care because of her medication refusals and noncompliance." Dr. O'Connell said that if B.D. stopped taking her medication, she would become psychiatrically unstable. B.D. did not acknowledge that her medications were necessary to prevent her psychiatric decompensation.

Dr. O'Connell testified that B.D.'s independent living skills are "generally intact" but only "because she's in a structured and supportive environment." Dr. O'Connell opined that B.D.'s mental disorder prohibits her from independent self-care. Dr. O'Connell discussed that in the event that B.D. was taken off conservatorship, her plan was to rent an RV for $538 per month and to live in it alone. Dr. O'Connell said this plan was not realistic because if B.D. lived by herself, she would have a difficult time managing medications and making safe decisions for herself. Dr. O'Connell discussed how B.D. could work toward transitioning to an independent cottage at her current placement but noted that B.D. did not want to do that because there would still be rules

3

B.D. would need to abide by. Dr. O'Connell noted that B.D. had basic skills for independent living, stating that B.D. "could cook herself a meal" or "clothe herself appropriately." But Dr. O'Connell ultimately opined that B.D. cannot currently provide for her food, clothing, and shelter as a result of a mental disorder.

Dr. O'Connell explained that B.D. is impaired in "her judgment and reasoning and also her belief that she doesn't have anger problems when she's out in public." Dr. O'Connell said B.D. continues to lack insight into her emotional or mood dysregulation challenges. Dr. O'Connell opined that there was no viable alternative to conservatorship at this time.

Dr. O'Connell opined that, because of her impaired judgment, B.D.: (1) should be denied the privilege of possessing a driver's license; (2) lacked the capacity to enter into contracts; and (3) was substantially unable to manage her own finances. Dr. O'Connell further opined that B.D. lacked the ability to understand and appreciate the consequences of treatment decisions given B.D.'s view that she would not need her medications once she is out of her current placement. Finally, Dr. O'Connell testified that B.D. posed a danger to herself or others if she owned a firearm because B.D. had recently endorsed suicidal thoughts.

On cross examination, Dr. O'Connell clarified that there "were specific examples of delusional content that were of a religious preoccupation, which is very different than saying [B.D.'s] delusional for being religious." Dr. O'Connell also said that "[p]rayer is not considered a delusion either" but that nonetheless B.D.'s religious preoccupations had previously interfered with her treatment.

At one point, in response to questioning by B.D.'s counsel, Dr. O'Connell stated that "it's well documented in the records" that B.D. had experienced "delusional content." For the first time, B.D.'s counsel objected to Dr. O'Connell's response, citing *People v. Sanchez* (2016) 63 Cal.4th 665. The trial court said, "[w]ell, you asked the question, so she's answering your questions." Defense counsel said, "I don't have those

4

records that she's referring to. I have never been provided copies of those." The court said the objection was "noted for the record." The court then asked Dr. O'Connell whether her opinions were supported by her evaluation of B.D. as opposed to B.D.'s medical history. Dr. O'Connell responded that they were supported by her evaluation of B.D.

B.D. also testified. She said she was "trying to get the phone number" for the owners of the RV she wished to rent. Regarding the incident where she got into a stranger's car, B.D. testified that the stranger was "making it pretty clear that he was some sort of like almost angel." B.D. said, "I did actually believe that when he actually sounded like he was being very kind to me that it was a gift coming from God." B.D. testified that this was a bad decision and that she would not do it again.

At the conclusion of trial on November 13, 2025, the trial court found beyond a reasonable doubt that B.D. was "gravely disabled such that she suffers from a mental health disorder and that she is, as a result of her mental health disorder, unable to provide for her basic personal needs." The court continued the conservatorship for one year and told counsel for the Public Guardian "if you'll submit an order, I'll sign it." That same day, B.D. filed a notice of appeal.

On November 24, 2025, the court issued a written order reappointing a conservator and specifying that B.D. "shall not possess a license to operate a motor vehicle, enter into contracts, have the right to refuse or consent to treatment related to [B.D.'s] being gravely disabled, have the right to refuse or consent to routine medical treatment unrelated to being gravely disabled, or have the right to possess firearms."

DISCUSSION

Appellant argues the trial court erred in admitting hearsay evidence offered by Dr. O'Connell throughout her testimony. In appellant's view, all testimony concerning evidence contained in appellant's medical records should have been excluded under

5

*People v. Sanchez, supra*, 63 Cal.4th 665.  Appellant acknowledges that her trial counsel only objected once on this basis.  But appellant contends that an earlier objection would have been futile given that the trial judge's comments "made it clear that he did not understand the hearsay rule."

Appellant has forfeited this claim.  "Ordinarily, 'the failure to object to the admission of expert testimony or hearsay at trial forfeits an appellate claim that such evidence was improperly admitted.' " (*People v. Perez* (2020) 9 Cal.5th 1, 7.)  Here, appellant failed to timely object to most of the testimony at issue.  Appellant did not object at all during Dr. O'Connell's direct examination and objected only once during cross examination.  To the extent appellant challenges testimony that was not timely objected to at trial, her claim is forfeited.  We reject the argument that earlier objections would have been futile because the trial court did not understand the hearsay rule.  Even assuming this is a proper basis for finding futility, nothing in the record supports the assertion that the court misunderstood the hearsay rule.

As to the sole objection raised, the trial court never sustained or overruled the objection.  Rather, the court "noted" the objection and then clarified with Dr. O'Connell that the opinions provided were based on her direct evaluation of B.D., as opposed to the records that trial counsel had objected to.  Since trial counsel did not press the court for a ruling to Dr. O'Connell's initial response, this portion of the claim as well is forfeited. (See *People v. Valdez* (2012) 55 Cal.4th 82, 122 ["Because defendant failed to pursue and obtain a ruling on these objections, he may not raise them on appeal"]; *id*. at p. 143 [" '[f]ailure to press for a ruling on a motion to exclude evidence forfeits appellate review of the claim' "].)  In any event, the court effectively mooted this objection by making it clear that the opinions Dr. O'Connell testified to were based on her direct evaluation of B.D., rather than the evidence to which counsel objected.

Appellant argues in the alternative that, should we conclude this claim is forfeited, trial counsel's failure to object constituted ineffective assistance of counsel.  To prevail

6

on this claim, B.D. " 'must show that counsel's performance was deficient, and that the deficiency prejudiced' " her opposition to the petition. (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

We " 'presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125.) " '[E]xcept in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal,' especially where 'the alleged incompetence stems from counsel's failure to object.' " (*People v. Jasso* (2025) 17 Cal.5th 646, 676.) " '[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.' " (*People v. Lopez* (2008) 42 Cal.4th 960, 972.)

There are conceivable reasons why B.D.'s counsel failed to object sooner to Dr. O'Connell's testimony or the failure to press the trial court for a ruling to the eventual objection. Counsel may have thought that B.D.'s medical records would have ultimately been admissible. (See *People v. Sanchez*, *supra*, 63 Cal.4th at pp. 674-675 [medical records and patient's statements may qualify for hearsay exceptions]; *Conservatorship of S.A.* (2018) 25 Cal.App.5th 438, 447 ["medical records . . . were admissible under the business records exception to prove the acts, conditions, and events recorded therein"]; § 5122, subd. (a) ["in a proceeding relating to the appointment or reappointment of a conservator . . . the statement of a health practitioner . . . included in the medical record is not made inadmissible by the hearsay rule" in certain circumstances].) Or, counsel may have concluded that Dr. O'Connell could properly base her opinion on the hearsay within B.D.'s medical records. (See *Sanchez*, at p. 685 ["Any expert may still *rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so"].) Or, counsel may have believed the evidentiary objection would not yield any meaningfully different results, given that Dr. O'Connell had recently personally evaluated B.D. and arrived at

7

her opinions based on those evaluations. (See *Conservatorship of K.W.* (2017) 13 Cal.App.5th 1274, 1285-1286 [finding *Sanchez* error harmless because expert's opinions were proper and expert had personally evaluated conservatee].) Because we cannot say that counsel lacked any conceivable reason for choosing not to object to most of Dr. O'Connell's testimony or for not pressing the eventual objection to one of Dr. O'Connell's responses, B.D. cannot show that her counsel's performance was deficient.

Next, appellant argues there was insufficient evidence that appellant was gravely disabled and that she was substantially unable to manage her financial resources.

As relevant here, a person is "gravely disabled" under the LPS Act if, "as a result of a mental health disorder, a severe substance use disorder, or a co-occurring mental health disorder and a severe substance use disorder, [the person] is unable to provide for their basic personal needs for food, clothing, shelter, personal safety, or necessary medical care." (§ 5008, subd. (h)(1)(A).) Section 5350 provides that "[t]he procedure for establishing, administering, and terminating a conservatorship under this chapter shall be the same as that provided in Division 4 (commencing with Section 1400) of the Probate Code," with exceptions not applicable here. Probate Code section 1801, subdivision (b) provides that "[a] conservator of the estate may be appointed for a person who is substantially unable to manage his or her own financial resources or resist fraud or undue influence."

We review a trial court's decision to appoint a conservator for substantial evidence. (See *Conservatorship of A.B.* (2026) 118 Cal.App.5th 362, 375.) "In the trial court, 'to establish that a person is gravely disabled, the evidence must support an objective finding that the person, due to mental disorder, is incapacitated or rendered unable to carry out the transactions necessary for survival or otherwise provide for his or her basic needs of food, clothing, or shelter,' and the public guardian must prove beyond a reasonable doubt that the proposed conservatee is gravely disabled. [Citations.] On

8

appeal, we apply the substantial evidence test to determine whether the record supports the court's finding of grave disability. The testimony of one witness may be sufficient to support such a finding." (*Conservatorship of Jesse G.* (2016) 248 Cal.App.4th 453, 460-461.) In conducting the substantial evidence review, the appellate court "must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

Substantial evidence supports the trial court's finding that B.D. was gravely disabled within the meaning of the LPS Act and unable to manage her finances. Dr. O'Connell testified that: (1) she agreed with appellant's diagnosis of schizoaffective order, bipolar type; (2) B.D. had religious preoccupations that interfered with her judgment; (3) B.D.'s impaired judgment resulted in her being unable to manage her own finances; (4) B.D. had been previously marked as inadequate for hygiene; (5) B.D.'s mental disorder prohibited her from independent self-care outside of a supported environment; (6) B.D. could not consistently provide for her food, clothing, and shelter as a result of her mental disorder; (7) B.D. had a history of noncompliance with her medication and continued to question her medication regimen; and (8) if B.D. stopped taking her medication, she would become psychiatrically unstable. This evidence readily supports beyond a reasonable doubt the conclusion that B.D. suffers from a mental health disorder that rendered her unable to provide for her basic personal needs and unable to manage her own finances.

Appellant repeatedly argues there was no "actual evidence" or "direct evidence" supporting various aspects of Dr. O'Connell's testimony. But Dr. O'Connell's testimony is itself evidence and, in any event, Dr. O'Connell provided examples of how B.D.'s past behavior informed her opinions.

9

For instance, Dr. O'Connell described how appellant got into a car with a stranger because she believed the stranger was sent to her by God. A reasonable factfinder could infer from this evidence that appellant could be susceptible to financial or other forms of exploitation. Similarly, Dr. O'Connell explained how appellant lacked insight into her mental health disorder; questioned her medication regimen; and would become psychiatrically unstable if she stopped taking her medication. A reasonable factfinder could conclude that, if appellant were released from her current placement, she would stop taking her medication, become unstable, and be unable to provide for her basic needs as a result. Dr. O'Connell's testimony was not, as appellant insists, based on mere speculation but instead on her experience and expertise.

Appellant also challenges the disabilities imposed in the trial court's written order in several respects. First, appellant argues the disabilities were not actually imposed. In appellant's view, the disabilities were never imposed because: (1) the court did not orally impose them at the conclusion of the trial; (2) the court lacked jurisdiction to impose them in the written order because appellant had already filed her notice of appeal before the written order was issued; and (3) the court improperly permitted the Public Guardian to decide which disabilities should be imposed, rather than deciding itself which disabilities were warranted.

Appellant identifies no authority requiring the trial court to orally state what disabilities were imposed. Her reliance on *Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, is misplaced because, in that case, the problem was that the factual basis for the disabilities imposed was unclear based on the record—not whether the trial court was required to orally impose those disabilities. (*Id*. at pp. 1577-1579.) Accordingly, we reject the argument that the court was required to orally impose the disabilities.

We also reject the contention that appellant's notice of appeal, filed on November 13, 2025, divested the court of jurisdiction over the matter and precluded the

court from issuing its written order. Properly framed, the issue here is that appellant filed her notice of appeal prematurely given the court's indication that its written order would be forthcoming. We deem appellant's notice of appeal to have been filed after entry of the court's written order imposing the disabilities. (See Cal. Rules of Court, rule 8.308(c) ["A notice of appeal filed before the judgment is rendered or the order is made is premature, but the reviewing court may treat the notice as filed immediately after the rendition of judgment or the making of the order"].)

We reject appellant's assertion that, by directing the Public Guardian to submit a draft order, the court improperly delegated a judicial function and permitted the Public Guardian to decide which disabilities to impose. The disabilities imposed in the written order were the same disabilities requested in the Public Guardian's petition, which the court granted. The court's statement directing the Public Guardian to submit an order is readily understood as a request to submit a draft order including the disabilities requested in the petition—not as a request for the Public Guardian to decide which disabilities are supported by substantial evidence.

Lastly, appellant argues that, assuming the disabilities were actually imposed, they were not supported by substantial evidence. We disagree. As discussed, there was evidence that appellant may be susceptible to exploitation, which supports the prohibition from entering into contracts. There was also evidence that appellant had previously stopped taking her epilepsy medication due to her mental health disorder and that she questioned her treatment for her mental health disorder. This evidence supports denying appellant the right to refuse or consent to treatment related to being gravely disabled and the right to refuse or consent to routine medical treatment unrelated to her being gravely disabled. Given appellant's recent suicidal thoughts, there was substantial evidence supporting the decision to prohibit her from owning a firearm. Finally, the evidence that appellant's delusions impaired her judgment supports denying her the privilege of operating a motor vehicle.

11

DISPOSITION

The order reappointing a conservator of the person and estate of B.D. is affirmed.

/s/_____
HULL, Acting P. J.

We concur:

/s/_____
KRAUSE, J.

/s/_____
MESIWALA, J.

12