Filed 10/3/24 Brown v. Deutsche Bank National Trust CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| CHERIE BROWN,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>DEUTSCHE BANK NATIONAL TRUST CO., as Trustee, etc.,<br><br>　　　Defendant and Respondent. | B324911<br><br>(Los Angeles County Super. Ct. No. BC475181) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge. Affirmed.

　　　JDR Law Inc. and John D. Rowell for Plaintiff and Appellant.

　　　Kutak Rock, Steven M. Dailey and Jennifer L. Andrews for Defendant and Respondent.

## INTRODUCTION

In 2007 Cherie Brown purchased a home from Youval Zive and executed a promissory note in favor of Zive secured by a deed of trust. The principal amount of the promissory note included the balance due on two underlying promissory notes executed by Zive in favor of Washington Mutual Bank and secured by deeds of trust on the property. In 2011 Zive foreclosed on the property, and the property was sold at a trustee's sale.

Brown filed this action against Zive and others for fraud, wrongful foreclosure, and quiet title. She asserted one cause of action for quiet title against Deutsche Bank Trust Company, the trustee for a securitized trust into which one of the underlying Washington Mutual loans was transferred. Brown argues the trial court erred in granting Deutsche Bank's motion for summary judgment and denying her request for a continuance under Code of Civil Procedure section 437c, subdivision (h).[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *Zive Obtains a Loan From Washington Mutual*

In March 2006 Zive executed a promissory note in the amount of $980,000 in favor of Washington Mutual secured by a deed of trust on property he owned in Los Angeles (the Washington Mutual-Zive loan). After the loan closed, Washington Mutual transferred the loan to the WaMu Pass-Through Certificates Series 2006-AR5 Trust (the Trust),

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

2

a securitized trust, pursuant to a pooling and servicing agreement that named Deutsche Bank as trustee.[2]

B.    *Brown Purchases the Property From Zive*

In July 2006 Brown became interested in purchasing the property from Zive. Zive told Brown that he was an attorney and that he would prepare all the necessary sales and financing documents for the transaction. Zive said the purchase "would be financed by cash payments by Brown of $155,000," a "'first loan'" by Washington Mutual in the amount of $980,000, and a loan from Zive for $72,500 (the Zive-Brown loan). Brown and Zive signed a purchase agreement in which Brown agreed to buy the property for a little more than $1.2 million.

In November 2006 Brown executed a promissory note in favor of Zive for approximately $1 million (the Zive-Brown note). The promissory note provided for monthly payments of $3,030 "or more," a $30,000 principal payment due on December 20, 2006, and a maturity date of March 1, 2008. The promissory note

---

[2]    "The mortgage securitization process has been concisely described as follows: 'To raise funds for new mortgages, a mortgage lender sells pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers. The right to receive trust income is parceled into certificates and sold to investors, called certificateholders. The trustee hires a mortgage servicer to administer the mortgages by enforcing the mortgage terms and administering the payments. The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a Pooling and Servicing Agreement ("PSA").'" (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 930, fn. 5.)

stated the principal amount included the unpaid balance on two underlying promissory notes (in the aggregate amount of approximately $1 million) executed by Zive in favor of Washington Mutual and secured by deeds of trust on the property. In January 2007 Zive recorded two documents with the county recorder's office: a grant deed transferring the property to Brown and a deed of trust (the Zive-Brown deed of trust) securing the Zive-Brown note. In March 2008 Zive and Brown executed an addendum to the Zive-Brown note extending the maturity date to March 1, 2010, conditioned on Brown paying $30,000 in quarterly installments.

C.    *JP Morgan Chase Bank Acquires the Assets of Washington Mutual*

In September 2008 Washington Mutual failed, and the Office of Thrift Supervision appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. Under a purchase and assumption agreement with the FDIC, JPMorgan Chase Bank purchased Washington Mutual's assets and assumed "all mortgage servicing rights and obligations." In June 2009 JPMorgan Chase assigned the Washington Mutual-Zive deed of trust to Deutsche Bank as trustee for the Trust.

D.    *Zive Forecloses on the Zive-Brown Deed of Trust*

Brown alleged that she made payments to Zive on the Zive-Brown note by delivering to him checks made payable to Washington Mutual and JPMorgan Chase, but that after January 1, 2009 Zive did not deliver the checks to the lenders. In June 2009 the trustee on the Washington Mutual-Zive deed of trust recorded a notice of default that stated Zive stopped making

4

payments on the loan in January 2009.  In September 2009 the trustee recorded a notice of trustee's sale.

In 2011 Zive initiated nonjudicial foreclosure proceedings against Brown on the Zive-Brown deed of trust.  A notice of default was recorded in January 2011, and a notice of trustee's sale was recorded in July 2011.  In September 2011 Zive assigned his rights in the Zive-Brown deed of trust to Phoenix Realty Investments, which subsequently purchased the property at a trustee's sale.  Phoenix Realty filed an unlawful detainer action against Brown, obtained a judgment, and evicted her from the property.

E.    *Brown Files This Action*

In December 2011 Brown filed this action against Zive, related parties, and Doe defendants for fraud, wrongful foreclosure, and quiet title.  In 2015 Brown amended her complaint to substitute Deutsche Bank as one of the Doe defendants.  In the operative second amended complaint, the only cause of action Brown asserted against Deutsche Bank was for quiet title.

In 2019 the trial court dismissed the action pursuant to sections 583.310 and 583.360 because Brown failed to bring the case to trial within five years.  We reversed, holding the trial court should have excluded from its calculation of the five-year period the amount of time an automatic stay was in effect while one of the defendants was in bankruptcy.  (*Brown v. Zive* (Nov. 16, 2021, B300415) [nonpub. opn.].)

F.   *The Trial Court Grants Deutsche Bank's Motion for Summary Judgment*

In 2022 Deutsche Bank moved for summary judgment. Deutsche Bank argued the Washington Mutual-Zive deed of trust took priority over Brown's interest in the property because the deed of trust was recorded nine months before the grant deed to Brown and because Brown had actual notice of the Washington Mutual-Zive deed of trust. Deutsche Bank argued it was authorized to enforce the Washington Mutual-Zive deed of trust as the trustee of the Trust and as the holder of the original Washington Mutual-Zive note.

In support of its motion Deutsche Bank submitted the declaration of Sherry Benight, a document control officer at Select Portfolio Servicing (SPS). Benight stated that SPS was "the authorized loan servicer for Deutsche Bank National Trust Company, as Trustee for WaMu Pass-Through Certificates Series 2006-AR5 Trust," and that the Trust owned the Washington Mutual-Zive loan. Benight said she was authorized to provide the declaration on behalf of Deutsche Bank pursuant to the servicing agreement between SPS and Deutsche Bank. She stated the Trust had owned the Washington Mutual-Zive loan, and Deutsche Bank had been the trustee for the Trust, since May 2006. Benight stated that Washington Mutual was the original servicer of the Washington Mutual-Zive loan, that JPMorgan Chase became the servicer at some point, and that SPS became the servicer in August 2013.

Benight stated that SPS maintained "loan records" and "collateral files" for loans it serviced and that SPS was "in possession of the collateral file" for the Washington Mutual-Zive loan, which included "copies of the documents evidencing the

6

origination of the Loan and the subsequent assignment and transfer thereof." Benight said SPS was "in physical possession of the . . . *original* 'wet-ink' Note for the Loan, which SPS maintains on behalf of Deutsche Bank." She stated the original note in SPS's file contained the "original signature of Zive" and "an endorsement stamp, from Washington Mutual, endorsing the Note in blank without recourse." Deutsche Bank attached copies of the Washington Mutual-Zive note and deed of trust as exhibits to Benight's declaration.

Benight stated Washington Mutual transferred its interest in the loan to a subsidiary, WaMu Asset Acceptance Corporation, which transferred the loan to the Trust. A copy of the pooling and servicing agreement for the Trust was attached as an exhibit to Benight's declaration. Also attached was a document Benight described as the "mortgage schedule" for the pooling and servicing agreement. Benight stated the mortgage schedule showed the Washington Mutual-Zive loan was "one of the loans transferred into the Trust in advance of the Closing Date for the Trust." Deutsche Bank also submitted excerpts of Benight's deposition testimony.

Deutsche Bank asked the court to take judicial notice of eight documents, including a declaration by Zive, the order of the Office of Thrift Supervision appointing the FDIC as receiver of Washington Mutual, the purchase and assumption agreement by which JPMorgan Chase purchased Washington Mutual's assets, and four documents recorded with the county recorder's office.

In opposition to the motion, Brown argued Deutsche Bank did not meet its initial burden to show the Trust owned the Washington Mutual-Zive note and deed of trust. Brown objected to Benight's declaration on the grounds Benight lacked personal

7

knowledge and could not authenticate the documents attached to her declaration. Brown also opposed some of Deutsche Bank's requests for judicial notice. Brown argued that, because Deutsche Bank did not submit any admissible evidence Washington Mutual transferred the Washington Mutual-Zive note to the Trust before the Trust's cut-off date of May 1, 2006, the assignment to the Trust was "a nullity." Brown asked the court to continue or deny the motion under section 437c, subdivision (h), to allow her to take an additional deposition of Deutsche Bank regarding the "transfer/delivery/assignment" of the Washington Mutual-Zive note and deed of trust to the Trust.

Brown submitted her declaration, the declaration of her attorney, and excerpts from the depositions of Deutsche Bank representatives. Counsel for Brown's declaration described the depositions Brown had taken of the Deutsche Bank representatives and the documents Deutsche Bank had produced and explained why Brown needed additional discovery.

In reply, Deutsche Bank argued that Brown did not have standing to challenge the assignment of the deed of trust and that, even if the deed of trust was not properly assigned to the Trust, Deutsche Bank could enforce the deed of trust as the holder of the original Washington Mutual-Zive note. Deutsche Bank objected to the majority of the declarations by Brown and her attorney and to the deposition testimony of the Deutsche Bank representatives.

The court granted Deutsche Bank's motion for summary judgment. The court ruled Deutsche Bank was entitled to summary judgment on Brown's cause of action for quiet title because the Washington Mutual-Zive deed of trust "undisputedly takes priority over [Brown's] interest" in the property. The court

8

stated that "the interest in the loan was transferred to Deutsche Bank," that the Washington Mutual-Zive loan was transferred to the Trust, that Brown "had actual notice" of the Washington Mutual-Zive loan "at the time she acquired her interest in the property," and that "any interest [Brown] obtained in the property was subject to this prior recorded lien."

The court overruled Brown's objections to Benight's declaration[3] and the deposition testimony, took judicial notice of Zive's declaration and its attachments, and sustained in part and overruled in part Brown's objections to Deutsche Bank's request for judicial notice of two recorded deeds of trust, the Office of Thrift Supervision order, and the purchase and assumption agreement (although the trial court did not indicate what portions of these documents it judicially noticed). According to the minute order from the hearing on Deutsche Bank's motion for summary judgment, the court admitted into evidence the Washington Mutual-Zive deed of trust and the pooling and servicing agreement. The trial court sustained all of Deutsche Bank's objections to Brown's evidence. The court denied Brown's request under section 437c, subdivision (h), to continue the hearing on the motion for summary judgment. The court entered judgment for Deutsche Bank, and Brown timely appealed.

---

[3]     The court stated in its order "Benight's personal knowledge is not required because the offered testimony comes from SPS's business records and therefore [is] subject to the business records exception."

9

**DISCUSSION**

A.  *The Trial Court Did Not Prejudicially Err in Ruling on the Parties' Evidentiary Objections and Requests for Judicial Notice*

1.  *Any Error in Overruling Brown's Objections Was Harmless*

Brown argues the court erred in overruling her objections to Benight's declaration. Brown contends Benight lacked personal knowledge to authenticate the six documents attached to her declaration because "Benight did not see any of the documents . . . being made or executed." Brown also argues the court erred in ruling the documents were admissible under the business records exception to the hearsay rule. Any error by the trial court in ruling on Brown's objections, however, was harmless.

"The business records exception requires a foundational showing that (1) the writing was made in the regular course of business; (2) at or near the time of the act, condition, or event; (3) the custodian or other qualified witness testifies to its identity and mode of preparation; and (4) the sources of information and mode and method and time of preparation indicate trustworthiness." (*Conservatorship of S.A.* (2018) 25 Cal.App.5th 438, 447; see Evid. Code, § 1271.) Benight's declaration made this showing for records her employer, SPS, created and maintained in its role as servicer of the Trust. But nothing in Benight's declaration established she knew how Washington Mutual prepared or maintained the documents that were transferred to SPS when SPS became the Trust's servicer.

10

Therefore, whether reviewed for abuse of discretion or de novo,[4] the court erred in ruling several Washington Mutual-generated documents were admissible under the business records exception to the hearsay rule.[5] (See *Midland Funding LLC v. Romero* (2016) 5 Cal.App.5th Supp. 1, 9 [employee of servicer of defaulted credit card account "had personal knowledge that the documents were part of [the current account owner's] business records, but did not satisfactorily establish those documents were a part of the prior creditor's business records under Evidence Code

---

[4]    See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 ("we need not decide generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo"); *Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226 (in *Reid* "the California Supreme Court expressly declined to reach the issue of the appropriate standard of review for reviewing a trial court's rulings on evidentiary objections made in connection with a summary judgment motion").

[5]    In particular, the court erred in admitting a document titled "Washington Mutual Mortgage Securities Corp. Legal Loan Listing as of 06/02/2006," which Benight stated was an excerpt from the pooling and servicing agreement's "Mortgage Schedule." Deutsche Bank argued the document, which included information about a loan that appeared to be the Washington Mutual-Zive loan, was evidence the Washington Mutual-Zive loan was transferred to the Trust. But the document was not included in the pooling and servicing agreement, and Benight's declaration was insufficient to admit the document under the business records exception to the hearsay rule. (See Evid. Code, § 1271, subds. (a), (b), & (c).)

11

section 1271" because "there was no evidence regarding the mode of preparation or other information indicating trustworthiness"]; *Sierra Managed Asset Plan, LLC. v. Hale* (2015) 240 Cal.App.4th Supp. 1, 9 [declaration by a debt collector's employee established, at best, the debt collector "received records originating from [the creditor] concerning the account in question," which fell "short of the foundation necessary for admission of business records as against a hearsay objection"]; see also *People v. Selivanov* (2016) 5 Cal.App.5th 726, 775 [witnesses did not establish documents were admissible under the business records exception because, although the "witnesses may have been knowledgeable about [accounting software] and accounting generally, they could not offer the jury any information about the 'identity and the mode of . . . preparation'" of the documents offered as evidence].)

The error, however, was harmless. (See *ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 293 ["the 'judgment of the trial court may not be reversed on the basis of the erroneous admission of evidence, unless that error was prejudicial'"]; *Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 799 [appellant has the burden of establishing an error in admitting hearsay documents under Evidence Code section 1271 was prejudicial].) The only document Deutsche Bank needed from the ones attached to Benight's declaration to meet its initial burden on summary judgment (other than documents that were also attached to Deutche Bank's request for judicial notice) was the pooling and servicing agreement, and that document was admissible as an executed

12

document for its operative facts.[6]  (See *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 316 ["documents containing operative facts, such as the words forming an agreement, are not hearsay"]; see also *J&A Mash & Barrel, LLC v. Superior Court* (2022) 74 Cal.App.5th 1, 18-19 ["'Operative facts draw their significance from having been said or written regardless of whether they are true, and such facts lie outside the hearsay rule.'"]; *People v. Nelson* (2012) 209 Cal.App.4th 698, 711 [error in admitting documents under Evidence Code section 1271 was harmless where "there was other competence evidence" of the same fact].)[7]

---

[6]     As we will discuss in section B(2) of the Discussion, the pooling and servicing agreement—combined with admissible statements in Benight's declaration and documents subject to judicial notice—showed that Brown acquired her interest in the property subject to the Washington Mutual-Zive deed of trust, that Deutsche Bank owned the Washington Mutual-Zive note, and that Deutsche Bank was authorized to enforce the Washington Mutual-Zive deed of trust.

[7]     Although Brown argues generally that Benight's declaration did not authenticate the documents Deutsche Bank submitted in support of its motion for summary judgment, she does not challenge the authenticity of the pooling and servicing agreement, a copy of which is available on the U.S. Securities and Exchange Commission's website.  In any event, as we will discuss, Brown relied on the pooling and servicing agreement to argue the assignment of the Washington Mutual-Zive deed of trust was void because it violated terms of the pooling and servicing agreement.  (See Evid. Code, § 1414 ["A writing may be authenticated by evidence that: [¶] (a) The party against whom it is offered has at any time admitted its authenticity; or [¶] (b) The

2.      *The Trial Court Did Not Err in Ruling on*
        *Deutsche Bank's Requests for Judicial Notice*

Deutsche Bank asked the trial court to take judicial notice of eight documents, five of which requests Brown opposed. The trial court properly took judicial notice of: (1) the order of the Office of Thrift Supervision appointing the FDIC as receiver of Washington Mutual; (2) the purchase and assumption agreement between the FDIC and JPMorgan Chase; (3) the Washington Mutual-Zive deed of trust; (4) the Zive-Brown deed of trust; and (5) the grant deed to Brown.[8]

The Office of Thrift Supervision order and the purchase and assumption agreement were judicially noticeable under Evidence Code section 452, subdivisions (c) and (h). (See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 753 ["the FDIC's official act of transferring certain WaMu assets (but not certain liabilities) to JPMorgan as of September 25, 2008—as *evinced* by the [Purchase and Assumption] Agreement—is an official act subject to judicial notice under [Evidence Code] section 452, subdivision (c)," and the "fact of the P & A Agreement and the fact of the transfer to JPMorgan of WaMu assets . . . are not reasonably subject to dispute and are capable of ready determination" under Evidence Code section 452, subdivision (h)]; *Argueta v. J.P. Morgan Chase* (E.D.Cal. 2011) 787 F.Supp.2d 1099, 1103 [taking judicial notice of the purchase

---

writing has been acted upon as authentic by the party against whom it is offered."].)

[8]     Deutsche Bank requested judicial notice of other documents, but we address only those documents Deutsche Bank needed to carry its initial burden.

14

and assumption agreement between the FDIC and JPMorgan Chase]; *Rosenfeld v. JPMorgan Chase Bank, N.A.* (N.D.Cal. 2010) 732 F.Supp.2d 952, 959 [taking judicial notice of the purchase and assumption agreement between the FDIC and JPMorgan Chase]; *Jarvis v. JP Morgan Chase Bank, N.A.* (C.D.Cal., July 23, 2010, No. CV 10-4184-GHK (FMOx) 2010 WL 2927276, p. 1 [taking judicial notice of the Office of Thrift Supervision order appointing the FDIC as receiver of Washington Mutual and the purchase and assumption agreement between the FDIC and JPMorgan Chase].)

The two deeds of trust and the grant deed were judicially noticeable under Evidence Code section 452, subdivisions (c) and (h).  (See *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. 1 (*Yvanova*) ["existence and facial contents of" a deed of trust, an assignment of the deed of trust, and other recorded documents are subject to judicial notice under Evidence Code section 452, subdivisions (c) and (h)]; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 266 ["a court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language"], disapproved on another ground in *Yvanova*, at p. 939, fn. 13.)[9]

---

[9]     Brown also argues the trial court erred in overruling her objections to Benight's deposition testimony and in sustaining Deutsche Bank's objections to her declaration, the declaration of her attorney, and deposition testimony of Deutsche Bank representative Mark Syphus.  Because we do not rely on Benight's deposition testimony in concluding Deutsche Bank met its initial burden on summary judgment, and because Brown's

B.      *The Trial Court Did Not Err in Granting Deutsche Bank's Motion for Summary Judgment*

1.      *Applicable Law and Standard of Review*

"A court may grant a motion for summary judgment only when all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225, internal quotation marks omitted; see § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action." (*Regents*, at p. 618; see *Long Beach Memorial Medical Center v. Allstate Ins. Co.* (2023) 95 Cal.App.5th 710, 715; *Mattei v. Corporate Management Solutions, Inc.* (2020) 52 Cal.App.5th 116, 122.) "'Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . ."'" (*Fajardo*, at pp. 225-226; see *Campbell v. FPI Management, Inc.* (2024) 98 Cal.App.5th 1151, 1162.)

"'"We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.] We 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.'"'" (*Fajardo v.*

---

evidence did not raise a triable issue of material fact, we do not consider whether the trial court erred in ruling on the admissibility of this evidence.

*Dailey*, *supra*, 85 Cal.App.5th at p. 226; see *Long Beach Memorial Medical Center v. Allstate Ins. Co.*, *supra*, 95 Cal.App.5th at p. 716.)

> 2.    *Deutsche Bank Was Entitled to Summary Judgment on Brown's Cause of Action for Quiet Title*

In her only cause of action against Deutsche Bank, Brown sought to quiet title to the property.  "The purpose of a quiet title action is to finally settle and determine the parties' conflicting claims to the property and to obtain a declaration of the interest of each party." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 298; see § 761.020.)  To prevail on a cause of action for quiet title, a plaintiff must "demonstrate paramount title." (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 821.)  The trial court ruled that there were no triable issues of material fact and that Deutsche Bank was entitled to judgment on the quiet title cause of action as a matter of law.  The trial court did not err.

Deutsche Bank argued Brown acquired her interest in the property subject to the Washington Mutual-Zive deed of trust, which was recorded nine months before the grant deed to Brown. Deutsche Bank also argued Brown had actual notice of the Washington Mutual-Zive deed of trust because the Zive-Brown deed of trust mentioned the Washington Mutual-Zive loan.  In support of those arguments, Deutsche Bank submitted the

17

Washington Mutual-Zive deed of trust, the grant deed to Brown, and the Zive-Brown deed of trust.[10]

Deutsche Bank also submitted evidence it owned the Washington Mutual-Zive note and was authorized to enforce the Washington Mutual-Zive deed of trust. Benight stated that SPS was the authorized loan servicer for Deutsche Bank as trustee for the Trust and that SPS was "in possession of the collateral file" for the Washington Mutual-Zive loan.[11] Benight stated SPS had in its file the "*original* 'wet-ink' Note" for the Washington Mutual-Zive loan.[12] Deutsche Bank submitted the following documents showing Deutsche Bank owned the Washington Mutual-Zive loan as trustee for the Trust: (1) the 2006 pooling and servicing agreement by which WaMu Asset Acceptance Corporation conveyed a pool of mortgage loans to the Trust; (2) the 2008 order of the Office of Thrift Supervision appointing the FDIC as receiver of Washington Mutual; and (3) the 2008 purchase and assumption agreement by which JPMorgan Chase purchased Washington Mutual's assets and assumed "all

---

[10] As discussed, the trial court properly took judicial notice of the recorded grant deed and the deeds of trust.

[11] Brown did not object to these statements.

[12] Brown objected to this statement on the grounds that Benight lacked personal knowledge to make it and that the statement was inadmissible hearsay. Because Benight had personal knowledge of the contents of SPS's files and the note was not offered for the truth of its contents, the trial court did not err in overruling these objections.

18

mortgage servicing rights and obligations."[13]  From Benight's testimony SPS (the servicer for Deutsche Bank as trustee for the Trust) possessed the file for the Washington Mutual-Zive loan, it was a reasonable inference that loan was one of the loans transferred to the Trust.  And the documents showed JPMorgan Chase owned the assets formerly owned by Washington Mutual (including the Washington-Mutual Zive loan).  With this evidence, Deutsche Bank met its initial burden to show Brown did not have superior title to Deutsche Bank.

Brown argues Deutsche Bank did not have authority to enforce the Washington Mutual-Zive deed of trust because the assignment of that deed of trust to the Trust was void.  Brown contends that the pooling and servicing agreement required assets to be transferred to the Trust by May 1, 2006 and that the assignment of the Washington Mutual-Zive deed of trust to the Trust was not recorded until 2009, "a significant violation of the Cut-Off date" of the pooling and servicing agreement.  Brown also argues there was no evidence the Washington Mutual-Zive note was transferred to the Trust before the cutoff date.  She contends Deutsche Bank did not show that Cynthia Riley, who endorsed the Washington Mutual-Zive note as vice president of Washington Mutual, did so before the May 2006 cutoff date or

---

[13]    As discussed, the pooling and servicing agreement was admissible for a non-hearsay purpose, and the Office of Thrift Supervision order and purchase and assumption agreement were subject to judicial notice.  We also take judicial notice of an assignment of the Washington Mutual-Zive deed of trust by JPMorgan Chase to Deutsche Bank as trustee for the Trust, recorded in June 2009, which Deutsche Bank submitted in connection with its motion for judgment on the pleadings.  (See Evid. Code, §§ 452, subds. (c), (h), 459.)

that Riley held the position of vice president of Washington Mutual in May 2006.

But even if Washington Mutual violated the pooling and servicing agreement by transferring the Washington Mutual-Zive deed of trust to the Trust after the cut-off date, the assignment would be voidable by the Trust's beneficiary, but not void. *Yvanova*, *supra*, 62 Cal.4th 919, cited by Brown, does not support her argument. In *Yvanova* the Supreme Court held "a home loan borrower has standing to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale." (*Id*. at pp. 942-943.) Like Brown, the plaintiff in *Yvanova* argued the assignment of a deed of trust to a securitized trust was void because it occurred after the trust's closing date. (*Id*. at p. 925.) The Supreme Court in *Yvanova*, however, declined to address "whether a postclosing date transfer into a . . . securitized trust is void or merely voidable." (*Id*. at p. 931.)

Since *Yvanova*, California courts have overwhelmingly concluded that a postclosing assignment of a loan in violation of a pooling and servicing agreement renders the assignment voidable, not void, and that a borrower does not have standing to challenge the assignment. (See, e.g., *Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 43 ["Because any alleged irregularities in the securitization process are merely voidable at the securitized trust beneficiary's behest," borrowers "lack standing to challenge the Assignment on such grounds."]; *Mendoza v. JPMorgan Chase Bank, N.A.*, *supra*, 6 Cal.App.5th at p. 815 [assignments that "allegedly violate

20

PSA's and federal law are voidable rather than void, and as a result, borrowers do not have standing to challenge late transfers or other defects in the securitization process"]; *Yhudai v. IMPAC Funding Corp*. (2016) 1 Cal.App.5th 1252, 1259 ["a postclosing assignment of a loan to an investment trust that violates the terms of the trust renders the assignment voidable, not void"]; *Saterbak v. JPMorgan Chase Bank, N.A*. (2016) 245 Cal.App.4th 808, 815 [an "untimely assignment to a securitized trust made after the trust's closing date is . . . merely voidable"].)

In the face of this authority, Brown relies on a single, decade-old case that reached a different conclusion. In *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 the court held an assignment that occurred after the closing date of a pooling and servicing agreement was void. (*Id*. at p. 1097.) The court in *Glaski* reached that conclusion by relying on an unpublished New York trial court decision, *Wells Fargo Bank, N.A. v. Erobobo* (N.Y.Sup.Ct., Apr. 29, 2013, No. 31648/2009) 2013 WL 1831799 (*Erobobo I*), which a New York appellate court later reversed. (See *Wells Fargo Bank, N.A. v. Erobobo* (N.Y.App.Div. 2015) 127 A.D.3d 1176, 1178 [9 N.Y.S.3d 312] (*Erobobo II*); see *Kalnoki v. First American Trustee Servicing Solutions, LLC*, *supra*, 8 Cal.App.5th at p. 43 ["The trial court decision upon which *Glaski* relied has also since been overturned."].) The New York appellate court held a "mortgagor whose loan is owned by a trust . . . does not have standing to challenge the plaintiff's possession or status as assignee of the note and mortgage based on purported noncompliance with certain provisions of the [pooling and servicing agreement]." (*Erobobo II*, at p. 1178.) Federal courts have uniformly rejected the reasoning of *Erobobo I* (see *Yhudai v. IMPAC Funding Corp*., *supra*, 1 Cal.App.5th at

21

p. 1259 [*Erobobo I* "has not only been reversed, but soundly and overwhelmingly rejected"]), and California courts have consistently rejected the holding in *Glaski* (see *Mendoza v. JPMorgan Chase Bank, N.A.*, *supra*, 6 Cal.App.5th at p. 814 ["We can find no state or federal cases to support the *Glaski* analysis and will follow the federal lead in rejecting this minority holding on the issue presented in this case."]).[14]

In her reply brief Brown attempts to distinguish the decisions rejecting *Glaski* by arguing those cases "all involved trusts formed under New York law" and suggesting "the law of California should apply." But Brown provides no authority suggesting a late assignment would be void rather than voidable under California law or Delaware law, which governs the pooling and servicing agreement according to its choice of law provision. Therefore, she has forfeited the argument. (See *Mireskandari v. Gallagher* (2020) 59 Cal.App.5th 346, 371 [plaintiff forfeited an argument by not providing "any legal argument or citation to authority"]; *Ewald v. Nationstar Mortgage, LLC* (2017)

---

[14] Brown states *Glaski* was "cited by our Supreme Court in *Yvanova* with approval on the issue of standing." It is true the Supreme Court agreed with the *Glaski* court's "view that 'a borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would *void* the assignment' not merely render it voidable." (*Yvanova*, *supra*, 62 Cal.4th at p. 931.) As stated, however, the Supreme Court in *Yvanova* "express[ed] no opinion" on "the question of whether a postclosing date transfer into a New York securitized trust is void or merely voidable." (*Ibid.*)

22

13 Cal.App.5th 947, 948 ["failure to provide legal authorities to support arguments forfeits contentions of error"].)[15]

Brown also relies on *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, but that case is distinguishable. In *Sciarratta* the original lender, after assigning a promissory note and deed of trust to a bank, purported to assign the same note and deed of trust to a second bank seven months later, and the second bank foreclosed on the deed of trust. (*Id.* at pp. 558, 563.) The court concluded that, because the original lender assigned "'all beneficial interest'" in the note and deed of trust to the first bank, it "had nothing to assign" to the second bank. (*Id.* at p. 563.) Therefore, the court held, the purported assignment to the second bank was void. (*Id.* at p. 564.) Brown argues that Washington Mutual transferred the Washington Mutual-Zive deed of trust to the Trust after the Trust's cut-off date, not that

---

[15] Brown states the Trust is a Real Estate Mortgage Investment Conduit (REMIC) Trust and, citing *Glaski*, claims pooling and servicing agreements for REMIC trusts require deeds of trust to be transferred before a closing date "to maintain REMIC tax status." As discussed, courts have rejected the *Glaski* court's reasoning, including its reliance on tax laws governing REMIC trusts. (See, e.g., *Mendoza v. JPMorgan Chase Bank, N.A., supra*, 6 Cal.App.5th at p. 819 ["The tax implications of securitization simply do not render a voidable transaction void."]; *Hard v. Bank of New York Mello*n (E.D.Cal., Apr. 10, 2018, No. 2:14-cv-01948-TLN-CMK) 2018 WL 1726637, p. 4 [rejecting the plaintiff's argument "the late assignment is void because the purported late assignment is a 'prohibited transaction' under the Internal Revenue Code"].)

Washington Mutual had no deed of trust to assign. If Brown's claim were true, the assignment would be voidable, not void.[16]

C.    *The Trial Court Did Not Abuse Its Discretion in Denying Brown's Request for a Continuance*

Brown argues the trial court abused its discretion in denying her request to continue the hearing on Deutsche Bank's motion for summary judgment to allow Brown to take Deutsche Bank's deposition (for the third time) and to obtain more documents. Brown contends she needed the additional discovery to allow her "to produce evidence that showed Deutsche Bank had not transferred/assigned the note and trust deed before the Cut-Off Date."

Section 437c, subdivision (h), provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just." The declaration under section 437c, subdivision (h), must show "'"(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts."'" (*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 656; see *Cooksey v. Alexakis* (2004)

---

[16]    Because we conclude Deutsche Bank was authorized to enforce the Washington Mutual-Zive deed of trust as trustee of the Trust, we do not address whether Deutsche Bank could enforce the deed of trust as holder of the original promissory note.

123 Cal.App.4th 246, 254.) "The statute mandates a continuance of a summary judgment hearing upon a good faith showing by affidavit that additional time is needed to obtain facts essential to justify opposition to the motion." (*Cooksey*, at pp. 253-254.) We review the court's decision whether to grant a continuance for an abuse of discretion. (*Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 152; *Jade Fashion*, at p. 643.)

The trial court did not abuse its discretion in denying Brown's request for a continuance. Counsel for Brown's declaration did not show that the facts Brown sought to obtain were essential to opposing the motion. To the contrary, as discussed, the evidence Brown sought—that Washington Mutual did not endorse the Washington Mutual-Zive note and assign the Washington Mutual-Zive deed of trust to the Trust until after the Trust's May 1, 2006 cutoff date—would show only the assignment was voidable, not void. Because Brown could not defeat summary judgment by showing the assignment was voidable, the discovery was not essential to opposing the motion.

## DISPOSITION

The judgment is affirmed.  Deutsche Bank is to recover its costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.