Filed 4/22/26;  Modified and Certified for Partial Pub. 5/20/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

| Conservatorship of the Person and Estate of R.R. | C104253 |
|---|---|
| SHASTA COUNTY PUBLIC GUARDIAN, as Conservator, etc.,<br>　　　Petitioner and Respondent,<br><br>v.<br><br>R.R.,<br>　　　Objector and Appellant. | (Super. Ct. No. 23MH-0004057) |

R.R. appeals from the trial court's order reappointing the Shasta County Public Guardian (conservator) as her conservator pursuant to Welfare and Institutions Code[1] section 5361.  She contends (1) the court should have excluded testimony by a medical expert about the contents of her medical records as hearsay and (2) her current conservatorship should have automatically begun on the day her prior conservatorship expired.  We see no merit in either contention and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 2024, the trial court granted conservator's petition to be reappointed conservator of R.R., due to her grave disability, until May 13, 2025.  Conservator

---

[1]　　　Undesignated statutory references are to the Welfare and Institutions Code.

1

detained R.R. in a locked treatment facility. On February 26, 2025, conservator filed another petition for reappointment, with a hearing scheduled for May 13, 2025. The declaration supporting the petition stated that R.R. was gravely disabled because she lacked a realistic plan to obtain and prepare food; unrealistically depended on third parties to obtain and prepare meals; had medical conditions—obesity, hyperlipidemia, type 2 diabetes, and hypertension—that were exacerbated by poor diet; was unable to realistically plan to obtain clothing; refused to change clothing; was unwilling or unable to obtain legal or appropriate shelter; could not formulate a realistic plan to obtain shelter; was unable to use the assistance of others to meet shelter needs; and was unable to comply accurately and consistently with medication instructions without supervision.

The hearing did not occur on the scheduled date because the trial court was closed due to an emergency. The following week, the parties agreed to continue the hearing for two weeks because R.R. had been refusing to meet with the clinical psychologist who had been assigned to evaluate her disability. Conservator asked the court to "extend the letters" of conservatorship for the intervening two weeks, and R.R. did not object. The court ordered, "[T]he letters of conservatorship will be extended with an expiration date of June 3rd."

R.R. was 67 years old at the time of the hearing. She testified that she probably had schizophrenia and sometimes heard audio hallucinations. She said medication had "pretty much solved" her visual hallucinations, but the audio hallucinations she experienced were sometimes "really bad." When asked what medications she was taking, she stated that she wanted to take Abilify because she had problems with Zyprexa and Haldol. She also mentioned taking Metformin and reported that she took medications four times per day and usually got them herself. She said she would continue to take her medication if released but hoped that she could see a psychiatrist to help her.

R.R. stated she did not know if she had a safe place to go if released, but she hoped to find one in the Bay Area where she is from. She did not know where her

2

mother or father ended up, but she knew her brother had been in Santa Rosa and was now in Sunnyvale or Truckee. She had not talked to her family in a while. She thought she might need someone to help her look for an apartment in Mountain View or Sunnyvale, but she thought she could find a one bedroom apartment in those cities for $800 or $900 "per year." R.R. thought she could work to make money, either by making art, passing the certified public accounting test, or directing musicals. She also said she received disability payments, but she would have to ask conservator how to get access to the money.

R.R. hoped to have an in-home supportive services worker to transport her and help her shop for food and clothing. She thought she was "probably not" able to drive right now because she had a hard time concentrating, but she hoped her brain would clear up in a few months so that she could drive. She knew how to make salad and Hamburger Helper and would learn to make other food. When she had lived at a different facility, she had a hard time washing her clothes because the washer and dryer used an app that she could not work on her phone. But at her current facility, she wore clean clothing every day.

Dr. John Mahoney, a clinical psychologist at Shasta County Mental Health who was assigned to evaluate R.R. for the hearing, testified that R.R. had schizophrenia. Dr. Mahoney then described R.R.'s medical history contained in her medical records, without objection. The details included R.R.'s relocation to Shasta County, interactions with police, observations and reports about her symptomatic behavior, numerous hospital admissions, and prior placements in psychiatric facilities. Dr. Mahoney had seen R.R. two or three times since her conservatorship began, including the 85-minute evaluation for the hearing. He had also discussed R.R.'s treatment with his colleagues at Shasta County Mental Health during their monthly placement team meetings, but he did not have first-hand knowledge of all the underlying events detailed in R.R.'s medical records. Dr. Mahoney noted that his team had tried to transfer R.R. to a facility with less

3

restrictions, but she had refused, saying that she did not feel safe because the new facility was too open and unfamiliar.

During the most recent evaluation, Dr. Mahoney tested R.R.'s ability to follow medication instructions, and she got two out of four trials correct, which indicated that she would be likely to make some errors if she were managing her own medications. Dr. Mahoney explained that both overdosing and underdosing could be dangerous. He also administered verbal problem solving tests assessing everyday problem solving, and R.R. solved seven of the 10 problems. R.R. refused to participate in the complex figure test to assess her ability to plan, organize, and self-monitor. When Dr. Mahoney asked R.R. how she would get a home or an apartment to rent, her first response was that she did not know and would need help with that. When prompted, R.R. mentioned Web sites she could look on to find available places, but she was unable to articulate any steps in the process after that.

Dr. Mahoney described R.R.'s insight into her mental health condition as "marginal." For example, R.R. did not believe her mental disorder caused the problems that led to the appointment of a conservator for her. R.R. did not know the names of her medication when Dr. Mahoney interviewed her, and Dr. Mahoney also confirmed that R.R. was not taking Zyprexa or Haldol, medications she identified at the hearing.

Dr. Mahoney offered the following opinions about R.R.: (1) She is capable of giving informed consent for routine medical care but not for treatment of her mental health disorder; (2) her thinking is not sound enough to understand the nuances of contracts; (3) her mental health disorder prevents her from operating a car or possessing a firearm safely; (4) she is unable to provide for her food, clothing, and shelter because of her mental health disorder; (5) she is unable and unwilling to accept treatment relating to her mental health disorder; and (6) she is gravely disabled.

The trial court granted the petition to reappoint a conservator for R.R., except for the proposed order that conservator had the power to grant consent to routine medical

4

care.  The order indicated that the conservatorship would automatically terminate on June 2, 2026.

R.R. appeals.

## DISCUSSION

On appeal, R.R. makes two arguments:  (1) Dr. Mahoney testified to hearsay that should have been excluded and (2) the trial court started her conservatorship on the wrong day.  As we will explain, we see no merit in either argument.

### I

### *Hearsay Testimony*

In *People v. Sanchez* (2016) 63 Cal.4th 665, 686, our Supreme Court adopted a new rule regarding hearsay testimony by expert witnesses:  "When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay."  This rule applies in civil conservatorship proceedings.  (*Conservatorship of K.W.* (2017) 13 Cal.App.5th 1274, 1283-1284.)

We agree with R.R. that Dr. Mahoney testified to hearsay statements contained in her medical records without establishing an applicable hearsay exception.  But conservator did not need to establish a hearsay exception because, as R.R. concedes, she did not object to Dr. Mahoney's testimony.  "Ordinarily, 'the failure to object to the admission of expert testimony or hearsay at trial forfeits an appellate claim that such evidence was improperly admitted.' "  (*People v. Perez* (2020) 9 Cal.5th 1, 7; see Evid. Code, § 353, subd. (a).)  " 'The reason for the requirement is manifest:  a specifically grounded objection to a defined body of evidence serves to prevent error.  It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice.  It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.' "  (*People v. Partida* (2005) 37 Cal.4th 428, 434.)

R.R. asks us to excuse her failure to object in the trial court because her counsel performed ineffectively by failing to object. "[A] proposed conservatee has a statutory right to effective assistance of counsel." (*Conservatorship of David L.* (2008) 164 Cal.App.4th 701, 710; see § 5365; *Conservatorship of John L.* (2010) 48 Cal.4th 131, 151-152.) The parties suggest that the federal constitutional standard for establishing ineffective assistance of counsel applies, so we will assume it does. (See *David L.*, at p. 710 ["We need not decide whether a proposed conservatee has a constitutional right to effective assistance of counsel"].)

To demonstrate that her counsel performed ineffectively by failing to object, R.R. " 'must show that counsel's performance was deficient, and that the deficiency prejudiced' " her opposition to the petition. (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.) We " 'presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125.) " '[E]xcept in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal,' especially where 'the alleged incompetence stems from counsel's failure to object.' " (*People v. Jasso* (2025) 17 Cal.5th 646, 676; see § 5275.) " '[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.' " (*People v. Lopez* (2008) 42 Cal.4th 960, 972.)

Here, we cannot say there is no conceivable reason for R.R.'s counsel declining to object to Dr. Mahoney relating information from her medical records. For example, counsel could have known that conservator would have been able to establish that R.R.'s medical records were business records under Evidence Code section 1271. (See *People v. Sanchez*, *supra*, 63 Cal.4th at pp. 674-675 [medical records and patient's statements may qualify for hearsay exceptions]; *Conservatorship of S.A.* (2018) 25 Cal.App.5th 438, 447 ["medical records … were admissible under the business

6

records exception to prove the acts, conditions, and events recorded therein"]; see also Evid. Code, §§ 1561-1562 [business records may be authenticated by affidavit].) We also presume R.R.'s counsel knew that Dr. Mahoney could properly base his opinion on the hearsay within her medical records, even without a hearsay exception. (See *Sanchez*, at p. 685 ["Any expert may still *rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he[, she, or they] did so"]; accord, *Conservatorship of K.W.*, *supra*, 13 Cal.App.5th at pp. 1285-1286 [finding *Sanchez* error harmless because expert's opinions were proper and expert had personally evaluated conservatee].) And counsel would have known Dr. Mahoney had recently independently evaluated R.R., so counsel could have reasonably wanted to hear Dr. Mahoney relate R.R.'s medical history to learn to what extent he had based his opinion on the older, perhaps outdated, information.

Because we cannot say that counsel lacked any conceivable reason for choosing not to object to Dr. Mahoney's testimony, R.R. cannot show that her counsel performed ineffectively. This means she forfeited the right to raise the issue on appeal.

II

*Start Date Of Conservatorship*

R.R. also contends the trial court should have ordered the renewed conservatorship to start the day after the automatic expiration of the previous conservatorship, rather than on the day of the hearing. R.R. has not identified any case law supporting this interpretation of the relevant statutory provisions, and we have found none. We disagree with her interpretation.

Section 5361, subdivision (a) states: "Conservatorship initiated pursuant to this chapter shall automatically terminate one year after the appointment of the conservator by the superior court." Section 5361, subdivision (c)(1) provides, in part: "A facility in which a conservatee is placed shall release the conservatee at the conservatee's request when the conservatorship terminates.… The facility may detain the conservatee after the end of the termination date only if the conservatorship proceedings have not been

7

completed and the court orders the conservatee to be held until the proceedings have been completed."

To interpret these provisions, " '[w]e begin with the statutory language because it is generally the most reliable indication of legislative intent. [Citation.] If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.)

Section 5361 unambiguously states that a conservatorship begins upon "the appointment of the conservator by the superior court" and ends automatically one year later. Thus, the trial court correctly began R.R.'s conservatorship on the date it issued the order reappointing conservator, June 3, 2025. The statute does not provide for an automatic restarting of a conservatorship as R.R. contends. Rather, in order to detain a conservatee beyond the automatic termination date, conservatorship proceedings must not yet be completed and the court must order the conservatee held until the completion of proceedings. (§ 5361, subd. (c)(1).) Under this framework, the prior conservatorship is extended, and the completion of proceedings will either result in the appointment of a conservator, beginning a new conservatorship, or in the release of the conservatee. R.R. would have us retroactively restart a conservatorship on the date of the prior termination, but the language of the statute provides no basis for beginning a conservatorship before the issuance of a court order reappointing the conservator. (§ 5361.) Accordingly, we reject R.R.'s argument that the trial court chose the wrong date to begin her conservatorship.

DISPOSITION

The order reappointing conservator on June 3, 2025, is affirmed.


/s/
ROBIE, Acting P. J.

We concur:


/s/
BOULWARE EURIE, J.


/s/
FEINBERG, J.

9

Filed 5/20/26

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)


| | |
|---|---|
| <u>Conservatorship of the Person and Estate of R.R.</u> | C104253 |
| SHASTA COUNTY PUBLIC GUARDIAN, as Conservator, etc.,<br>     Petitioner and Respondent,<br><br>v.<br><br>R.R.,<br>     Objector and Appellant. | (Super. Ct. No. 23MH-0004057)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING, CERTIFYING OPINION FOR PARTIAL PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |


APPEAL from a judgment of the Superior Court of Shasta County, David E. Flynn, Judge. Affirmed.

Conness A. Thompson, under appointment by the Court of Appeal, for Objector and Appellant.

Joseph F. Larmour, County Counsel, for Petitioner and Respondent.

---

*       Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

10

THE COURT:

It is ordered that the opinion filed in this case on April 22, 2026, be modified as follows:

1.  On page 7, the second sentence of the first paragraph of part II of the Discussion, the words "and we have found none" are deleted so the sentence reads:

    R.R. has not identified any case law supporting this interpretation of the relevant statutory provisions.

2.  On page 8, after the last paragraph and before the Disposition, add the following paragraph:

    In a petition for rehearing, R.R. cites *People v. Nolasco* (2021) 67 Cal.App.5th 209 for the first time. *Nolasco* addressed the appellant's argument that his right to equal protection of the laws was violated because a successive conservatorship ordered pursuant to section 5361 would begin on a different date than his recommitment to the State Department of Developmental Services pursuant to section 6500. (*Nolasco*, at pp. 217-227.) The *Nolasco* court assumed the appellant's interpretation of section 5361 was correct without explicit construction of the statute (*Nolasco*, at pp. 217, 219) and then held that the difference between the statutes did not violate the right to equal protection (*id*. at pp. 225-226). This brief incidental analysis does not change our interpretation of section 5361. We also note that the authority cited by *Nolasco* to establish the start date of a successive conservatorship, *Conservatorship of Jose B.* (2020) 50 Cal.App.5th 963, 968-969, dealt with a conservatee's right to a speedy trial and did not construe section 5361. (See *Jose B.*, at pp. 967, 969-975.) " 'It is axiomatic … that a decision does not

11

stand for a proposition not considered by the court.' " (*Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 39.)  Neither of these cases establishes a basis for backdating the start of a conservatorship when recommitment proceedings are completed beyond the automatic termination of a prior conservatorship.  We maintain our conclusion that the trial court correctly reappointed the conservator for one year, counting from the date of the appointment.

There is no change in the judgment.

R.R.'s petition for rehearing is denied.

The opinion in the above-entitled matter filed on April 22, 2026, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be partially published in the Official Reports and it is so ordered.

BY THE COURT:


| /s/ |
| --- |
| ROBIE, Acting P. J. |


| /s/ |
| --- |
| BOULWARE EURIE, J. |


| /s/ |
| --- |
| FEINBERG, J. |

12